**In the Matter of FSC CORPORATION, a corporation, Debtor.**

**Bankruptcy No. 81–2558.**

United States Bankruptcy Court, W.D. Pennsylvania.

Feb. 17, 1983.

M. Bruce McCullough, Pittsburgh, Pa., for debtor.

John A. Tumolo, Pittsburgh, Pa., for Committee of Equity Security Holders.

Hillard Kreimer, Pittsburgh, Pa., for Committee of Unsecured Creditors.

Stanley E. Levine, Pittsburgh, Pa., for Subordinated Debentureholders Committee.

### MEMORANDUM OPINION

GERALD K. GIBSON, Bankruptcy Judge.

Presently before the Court are two petitions filed of record by the Committee of Equity Security Holders, hereinafter "Petitioners", in the above-captioned matter. In the first petition, entitled Petition to Modify Order of April 19, 1982, Petitioners seek to modify an order authorizing the Court appointed Responsible Officer of Debtor-in-Possession to vote the shares of its subsidiaries to elect directors and for such other shareholders actions proposed for such subsidiaries. In its second petition, entitled Petition to Vacate the Order of April 19, 1982, Petitioners aver that the order was entered ex parte and urge the Court to vacate the order as being in violation of due process.

In its first petition, Petitioners allege that the authority granted to the Responsible Officer to appoint and control the Boards of Directors is beyond the authority of a Responsible Officer and denies the shareholders of FSC Corporation their

rightful representation on the Boards of Directors of the various subsidiaries.

In response thereto, Debtor denies that the authority to appoint and control the Boards of Directors of Debtor's subsidiaries is beyond the authority of the Responsible Officer under any circumstances or by any corporate standard. The Committee of Unsecured Creditors also avers that the procedure by which the Responsible Officer functions is proper and sufficient pursuant to the Bankruptcy Code as well as the laws of the state in which Debtor is incorporated. The Committee of Unsecured Creditors further alleges that the petition is time-barred, for no appeal was taken from the entry of the April 19, 1982 order.

The facts are as follows. Debtor is incorporated under the laws of the state of Delaware. Debtor has five wholly-owned operating subsidiaries, two of which are involved in reorganization proceedings in this Court. There are numerous second-tier subsidiaries, four of which are involved in reorganizations proceedings in this Court.

The members of the Committee of Equity Security Holders, Petitioners herein, are G. Gray Garland, Chairman and owner of 916,372 shares of stock; Floyd Ganassi, owner of 916,374 shares of stock; and Richard S. Kaye, owner of 9,000 shares of stock. The shares of stock represented by members of the Committee of Equity Security Holders constitute forty-two per cent (42%) of the outstanding shares of FSC Corporation.

Immediately prior to the filing of the petition under Chapter 11 of the Bankruptcy Code, the following events took place. On September 16, 1981, then president of FSC, Stanley B. Scheinman, instructed Senior Vice-President of FSC, Richard J. Uhl, to assemble officers and others for an immediate meeting at the FSC Pittsburgh offices. At that meeting, Scheinman and G. Gray Garland, Jr., Chairman of the Board of Directors, announced that a new Board of Directors had been appointed and that all former board members had re-signed. It was also announced that Garland and Ganassi had sold a major portion of their stock in FSC for nominal consideration to a group headed by Lawrence Powers and Allen Portnoy. Garland represented that the new shareholders would infuse 5–10 million dollars into the financially troubled corporation. Subsequent to the signing of the acquisition documents but prior to the final closing, Portnoy rescinded the transaction and the new group of directors resigned. There had been an identity of membership among the respective Boards Directors of Debtor and its subsidiaries. As a result, the resignations of Debtor's Board members also left each subsidiary without a Board of Directors. Subsequent to the resignation of the new directors, Garland, Ganassi and Scheinman were not reinstated as directors, nor did they otherwise accept responsibility for the affairs of FSC.

In late September, 1981 Debtor was the subject of two involuntary petitions under the Bankruptcy Code, one of which was filed in this district and one of which was filed in the Southern District of New York by two separate groups of creditors. The matter was later converted to a voluntary petition and was transferred to this district.

On October 5, 1981 this Court entered an order which provided in pertinent part as follows:

> ... Richard J. Uhl is designated as the Responsible Officer of the Debtor-in-Possession under the Code and the person required to perform the duties of the Debtor-in-Possession under the Code and the person having all of the rights of the Debtor-in-Possession under the Code ... Richard J. Uhl is authorized to conduct the affairs of the business including the right to receive and disburse funds.

No appeal was taken from the October 5, 1981 Order of Court.

This Court has also designated Richard J. Uhl as Responsible Officer in the following related cases: Funding Systems Asset Management Corporation, a wholly-owned subsidiary; F/S Computer Corporation, a wholly-owned subsidiary; Funding Systems

Refining Corporation, a wholly-owned subsidiary; Funding Systems Coal Services Ltd., a wholly-owned subsidiary of Funding Systems Asset Management; Youngstown Steel Tank Company, a wholly-owned subsidiary of F/S Industrial Products Corporation which is a wholly-owned subsidiary of FSC; Youngstown Real Properties Inc., a wholly-owned subsidiary of Youngstown Steel Tank; and Asbury Industries, a wholly-owned subsidiary of F/S Industrial Products Corp. In each of the aforementioned cases, the Board of Directors had resigned prior to the filing of the petition under Chapter 11.

Shortly after the commencement of the bankruptcy proceedings, then Counsel for the Committee of Equity Security Holders sought the Court's permission to authorize expenditures of Debtor's funds, possibly in excess of $100,000 to comply with the auditing, reporting and filing requirements of the Securities and Exchange Commission in conjunction with the solicitation of proxies for voting on issues pertaining to a public company, including the election of directors. Quarterly reports have not been prepared since 1981, nor are there audited figures for the years 1981, 1982 or 1983. This Court has repeatedly denied such requests for the expenditure of funds in order to comply with the SEC requirements.

On April 19, 1982 the Court entered an Order authorizing Richard J. Uhl, Responsible Officer of the Debtor-in-Possession, to vote the shares of its subsidiaries to elect directors and for such other shareholders actions as shall be proposed for such subsidiaries. The Order further authorized the lending by the Debtor-in-Possession to Asbury Industries Inc. of a sum not to exceed $50,000 to be evidenced by a promissory note and secured by a security interest in property of Asbury. Finally, the order authorized the approval and consent on behalf of the Debtor-in-Possession of the plan of reorganization of Asbury Industries Inc., Debtor's affiliate, including the restructuring of indebtedness due from Asbury to Debtor into preferred stock.

In his affidavit, Counsel for the Debtor states that he informed then Counsel for the Committee of Equity Security Holders of his intent to present the petition authorizing Richard J. Uhl, as Responsible Officer, to vote the shares of stock of subsidiaries of Debtor to the Court for approval. He represents that he was advised by then Counsel for the Committee of Equity Security Holders that there was no objection thereto. On April 22, 1982 Counsel for the Debtor provided then Counsel for the Committee of Equity Security Holders with a copy of the order entered by this Court on April 19, 1982. No appeal was taken therefrom.

However, in his affidavit, then Counsel for the Committee of Equity Security Holders states that he would not have granted the authority to present the petition as unopposed by the Committee without first obtaining the authority of the members of the Committee; and no such authority was ever obtained.

Having concluded its Findings of Fact, the Court now turns to the arguments presented by counsel at the hearing on this matter, and their briefs in support thereof.

In its memorandum of law, Petitioners argue as follows. The Order of April 19, 1982 granting the Responsible Officer the right to vote shares of its subsidiaries, to elect directors, and for such other shareholder action proposed for such subsidiaries deprived shareholders of their entitlement to representation on the Board of Directors. The Order of April 19, 1982 effectively denied shareholders of their inherent rights and gave to the Responsible Officer unilateral control over FSC and its subsidiaries. The Petitioners urge the Court to direct the Responsible Officer to vote the shares of the subsidiaries so as to have shareholders representatives on all of the subsidiary boards and to eliminate the nominal representatives now composing those boards. In the alternative, Petitioners ask the Court to appoint members of the Committee of Equity Security Holders to the subsidiary boards. In support of their argument, Petitioners rely upon the

case of *In re J.P. Linahan, Inc.* 111 F.2d 590 (2d Cir.1940).

The Committee of Subordinated Debentureholders has submitted briefs in support of the petitions at bar. Therein, it relies upon the cases of *In re Lionel Corp.*, 30 B.R. 327 (Bkrtcy.S.D.N.Y.1983); *In re Bush Terminal Co.*, 78 F.2d 662 (2d Cir. 1935); and *In re J.P. Linahan, supra,* in support of its argument that the right of shareholders to elect directors of their choice is not to be denied even when a bankruptcy intervenes.

In its brief, Debtor argues that the Court properly granted the Responsible Officer the power to vote the stock of FSC's wholly-owned subsidiaries on October 5, 1981 at which time the Court entered an order designating Richard J. Uhl as Responsible Officer. The Order of April 19, 1982 merely confirmed the prior grant of such power.

Debtor avers that the Order of April 19, 1982 was a proper and judicious exercise of the Court's power under § 105 of the Code to deal with the fact that Debtor had no board of directors to oversee its affairs. Debtor further avers that the Court should not reverse the Responsible Officer's good faith business judgment not to select Petitioners as directors.

In its brief, the Committee of Unsecured Creditors argues that the power of a debtor-in-possession to operate the debtor's business is specifically set forth in 11 U.S.C. § 1108. In order to effectively operate the debtor's business, the Responsible Officer was granted the legitimate power to vote shares of Debtor's subsidiaries, to elect directors and to effectuate such other shareholder actions as proposed by the subsidiaries. The Committee of Unsecured Creditors further argues that pursuant to § 1107 of the Bankruptcy Code, as well as § 303 of the Delaware Corporation Law, the Court has the power to appoint a Responsible Officer of the Debtor who may vote the shares thereof and appoint boards of directors without further action by the shareholders. Finally, the Committee of Unsecured Creditors argues that the solicitation of proxies for the election of directors must comply with SEC regulations, and the cost of such solicitation would be prohibitive.

In its supplemental brief, Debtor argues that the *Lionel* case as cited by the Petitioners is inapposite to resolution of the dispute at bar for it involves the rights of shareholders in a New York corporation while the case at bar is governed by Delaware corporation law.

The Court agrees. The dispute at bar can readily be distinguished on the basis of its underlying state law and unusual facts.

■ Further, it is well-settled that unless a trustee has been appointed, the Bankruptcy Code does not affect the applicability of the corporation law of debtor's state of incorporation as it relates to management of the corporation. 5 *Collier on Bankruptcy* § 1103.07 at 1103–19 ff. 9 (15th ed. 1983). For that reason, the Court now examines those provisions of Delaware Corporation Law which have been cited by Debtor and the Committee of Unsecured Creditors. Section 226 thereof allows the Court to appoint a custodian for cause. It provides as follows:

§ 226. Appointment of custodian or receiver of corporation on deadlock or for other cause.

(a) The Court of Chancery, upon application of any stockholder, may appoint 1 or more persons to be custodians, and, if the corporation is insolvent, to be receivers, of and for any corporation when:

(1) At any meeting held for the election of directors the stockholders are so divided that they have failed to elect successors to directors whose terms have expired or would have expired upon qualification of their successors; or

(2) The business of the corporation is suffering or is threatened with irreparable injury because the directors are so divided respecting the management of the affairs of the corporation that the required vote for action by the board of directors cannot be obtained and the stockholders are unable to terminate this division; or

(3) The corporation has abandoned its business and has failed within a reasonable time to take steps to dissolve, liquidate or distribute its assets.

(b) A custodian appointed under this section shall have all the powers and title of a receiver appointed under section 291 of this title, but the authority of the custodian is to continue the business of the corporation and not to liquidate its affairs and distribute its assets, except when the Court shall otherwise order and except in cases arising under subparagraph (a)(3) of this section or section 352(a)(2) of this title.

Section 291 grants a receiver the authority to "do all acts which might be done by the corporation and which may be necessary or proper."

Section 303, as cited by the Committee of Unsecured Creditors, further provides as follows:

§ 303. Reorganization under a statute of the United States; effectuation

(a) Any corporation of this State, a plan of reorganization of which pursuant to the provisions of any applicable statute of the United States relating to reorganizations of corporations, has been or shall be confirmed by the decree or order of a court of competent jurisdiction, may put into effect and carry out the plan and the decrees and orders of the court or judge relative thereto and may take any proceeding and do any act provided in the plan or directed by such decrees and orders, without further action by its directors or stockholders. Such power and authority may be exercised, and such proceedings and acts may be taken, as may be directed by such decrees or orders, by the trustee or trustees of such corporation appointed in the reorganization proceedings (or a majority thereof), or if none be appointed and acting, by designated officers of the corporation, or by a master or other representative appointed by the court or judge, with like effect as if exercised and taken by unanimous action of the directors and stockholders of the corporation.

(b) Such corporation may, in the manner provided in subsection (a) of this section, but without limiting the generality or effect of the foregoing, alter, amend, or repeal its by-laws; constitute or reconstitute and classify or reclassify its board of directors, and name, constitute or appoint directors and officers in place of or in addition to all or some of the directors or officers then in office. . . .

■ In light of the above, it is clear that under the applicable state law there is sufficient authority for the Court's appointment of Richard J. Uhl as Responsible Officer authorized to conduct the affairs of the business, to vote the shares of its subsidiaries to elect directors and for such other shareholders actions proposed for such subsidiaries.

■ The Court is further satisfied that the authority granted to Richard J. Uhl is contemplated by § 1107(a) of the Bankruptcy Code which provides that a debtor-in-possession shall have all the rights, except the right to compensation, and powers of a reorganization trustee, which includes the power to operate debtor's business unless the Court orders otherwise. 5 *Collier on Bankruptcy* 1101.01 at 1101–2.

While it is unnecessary to belabor the extreme circumstances which surrounded the filing of the bankruptcy petition, the Court is firmly convinced that entry of the Orders of October 5, 1981 and April 19, 1982 were necessary, proper, and in conformity with sections 226 and 303 of General Corporation Law of the State of Delaware; and Section 1107 of the Bankruptcy Code. Further, § 105 of the Bankruptcy Code authorizes the Court to issue any order necessary to carry out the provisions of the Code.

In addition thereto, the Court is satisfied that the Order of April 19, 1982 merely confirmed the broad power granted to Richard J. Uhl by Order of October 5, 1981 wherein he was designated as the Responsible Officer of Debtor. It is therefore unnecessary to address the contradictory

representations contained in the affidavits of Counsel for the Debtor and then Counsel for the Committee of Equity Security Holders with regard to the adequacy of notice of the April 19, 1982 Order and the opportunity to be heard.

Based upon the foregoing, the Petition to Modify Order of April 19, 1982 and the Petition to Vacate the Order of April 19, 1982 are denied.

An appropriate order will be entered.